**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| INTEGRAL WIRELESS TECHNOLOGIES LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> D-LINK CORPORATION, <br><br> *Defendant.* | Civil Action No. 2:25-cv-00388 <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Integral Wireless Technologies LLC (hereinafter, "Integral Wireless" or "Plaintiff") files this Complaint for Patent Infringement against Defendant D-Link Corporation ("D-Link" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.     This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Title | Available At |
|---|---|---|---|
| 1. | 7,953,411 | Virtual Soft Hand Over in OFDM and OFDMA Wireless Communication Network | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7953411 |
| 2. | 8,156,360 | Systems and Methods for Waking Wireless LAN Devices | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8156360 |
| 3. | 10,033,716 | Method and Device for Publishing Cross-Network User Behavioral Data | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/10033716 |

| | Patent No. | Title | Available At |
|---|---|---|---|
| 4. | 8,073,866 | Method for Providing Content to an Internet User Based On the User's Demonstrated Content Preferences | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8073866 |
| 5. | 7,627,805 | Data Coding with an Efficient LDPC Encoder | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7627805 |
| 6. | 8,031,654 | Wireless Communication System, Apparatus for Supporting Data Flow and Methods Therefor | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8031654 |
| 7. | 7,707,213 | Hierarchical Update Scheme for Extremum Location | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7707213 |
| 8. | 7,707,214 | Hierarchical Update Scheme for Extremum Location with Indirect Addressing | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7707214 |

2.     Integral Wireless seeks injunctive relief and monetary damages.

## PARTIES

3.     Integral Wireless is a limited liability company formed under the laws of Texas with a registered office address located at 512 W Martin Luther King Jr. Blvd., Unit 281, Austin, TX 78701.

4.     Upon information and belief based on public information, D-Link is a corporation organized and existing under the laws of Taiwan.

5.     Upon information and belief based on public information, D-Link maintains an established place of business at No. 289, Sinhu 3rd Rd., Neihu District, Taipei City 114, Taiwan.

## JURISDICTION AND VENUE

6.     Integral Wireless repeats and re-alleges the allegations in Paragraphs above as though fully set forth in their entirety.

7.      This Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States, 35 U.S.C. § 271, et seq.

8.      This Court has personal jurisdiction over D-Link pursuant to due process and/or the Texas Long Arm Statute because, inter alia, (i) D-Link has done and continues to do business in the United States, including in the State of Texas; (ii) D-Link has committed and continues to commit acts of patent infringement in the United States, including in the State of Texas, including making, using, offering to sell, and/or selling accused products in the United States and Texas, and/or importing accused products into the United States and Texas, including by Internet sales and sales via retail and wholesale stores, inducing others to commit acts of patent infringement in the United States and Texas, and/or committing at least a portion of any other infringements alleged herein.

9.      In addition, or in the alternative, this Court has personal jurisdiction over D-Link pursuant to Fed. R. Civ. P. 4(k)(2).

10.     Venue is proper in this District under 28 U.S.C. § 1391(c)(3) because D-Link does not reside in any judicial district in the United States.

## THE ACCUSED PRODUCTS

11.     Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

12.     Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes various home security platforms and systems, including, but not limited to, the "Accused Products" set forth below:

- D-Link server system ("D-Link System");

- D-Link 5G compatible devices ("D-Link 5G Devices") including, but not limited to:

  - 5G NR AX3000 Wi-Fi 6 Router (G530), 5G IIoT Gateway (DOM-550-GSO), 5G M2M Router (DWM-550-G), 5G NR Outdoor Router (DWP-1010), 5G Wi-Fi 6 Mobile Hotspot (DWR-2101), DWM-311-G, DWM-330-G, DWM-3010, DWR-978, 5G Multi-Connect PoE Modem (DWM-314-GP), D-5GCore, DOR-3600, DOR-3100, DOR-3000, DTM-570-GS, DTM-550-G, 5GNR Wi-Fi 6 CPE device (DWR-2000), DWR-X2000, DWR-U2000, DWR-X2102, DWR-900V, DWR-3010, DWR-978 5G NR Router, DWP–1020 5G NR Outdoor CPE, DWR-2010 5G NR Enhanced Router, DWP-2010 5G Outdoor CPE

- 802.11n compatible devices ("D-Link 802.11n Devices") including, but not limited to:

  - AX6000 Wi-Fi 6 Smart Mesh Router (M60), AX3000 Wi-Fi 6 Smart Mesh Router (M30), EAGLE PRO AI AX1500 Mesh System (M15 1-Pack), EAGLE PRO AI AX1500 Mesh System (M15 2-Pack), EAGLE PRO AI AX1500 Mesh System (M15 3-Pack), EAGLE PRO AI AX3200 Mesh System (M32 1-Pack), EAGLE PRO AI AX3200 Mesh System (M32 2-Pack), AX1800 Mesh Router (M18 1-Pack), EAGLE PRO AI AX1500 Smart Router (R15), AX5400 Wi-Fi 6 Router (DIR-X5460), AC1750 MU-MIMO Wi-Fi Gigabit Router (DIR-1750), Smart AC3000 High Power Wi-Fi Tri Band Gigabit Mesh Router (DIR-3040), AX1500 Mesh Range Extender (E15), AC1200 WiFi Range Extender (DAP-1610), AX3000 Wi-

Fi 6 Mesh Range Extender (E30), 5G NR AX3000 Wi-Fi 6 Router (G530), AX3000 Wi-Fi 6 Router (X530), Compact-Full-Hd-Wi-Fi-Camera (DCS-6100LHV2), 2K QHD Indoor Wi-Fi Camera (DCS-8350LH), Compact Full HD Wi-Fi Camera (DCS-6100LH), AX3000 Wi-Fi 6 PCle Adapter with Bluetooth 5.1 (DWA-X3000), Wireless AC1200 Dual Band PCI Express Adapter (DWA-582), AX1800 Wi-Fi 6 USB Adapter (DWA-X1850), VR Air Bridge (DWA-F18), Whole Home Smart Wi-Fi Water Leak Sensor Kit (DCH-S1621KT), Cloud Managed Access Points (DBA-1210P, DBA-2520P, DBA-2820P, DBA-3620P, DBA-3621P, DBA-X1230P, DBA-X2830P, DAP-2610, DAP-2682, DAP-X2810, DAP-X2850, DAP-X3060, DAP-2662, DAP-3666, DIS-2650AP, DIS-3650AP), Routers- (DWR-978, DSR-1000AC), Access Points (DAP-2020, DAP-3711, DAP-3712, DWL-6610AP/APE, DWL-6620APS, DWL-8620AP/APE, DWL-8720AP, DWL-X8630AP, DAP-1360), Smart AI Cameras (DCS-8635LH, DCS-8000LHV3, DCS-8300LHV2), DWA-121, Wireless-N Nano USB Adapter (DWA-131), AC1300 MU-MIMO Wi-Fi Nano USB Adapter (DWA-181), Wireless N High-Gain USB Adapter (DWA-137), Wireless AC Dual Band USB Adapter (DWA-171), Wireless AC600 Dual Band USB Adapter with External Detachable Antenna (DWA-172), DWA-182, N300 4G Smart Router (G403), AX1500 4G Smart Router (G415), AX1500 4G CAT6 Smart Router (G416), EAGLE PRO AI AX3200 Smart Router (R32), 4G LTE M2M Router (DWM-313), 4G LTE Mobile WiFi Hotspot 150 Mbps (DWR-932), 5G Wi-Fi 6 Mobile Hotspot (DWR-2101), D-Link Wi-Fi 6

AX1800 Gigabit USB 3.0 Adapter with Cradle for Upgrading Desktop & Laptop PCs - (DWA-X1850-B1), D-Link AQUILA PRO AI AX3000 Smart WiFi 6 Mesh Router System 2-Pack - (M30/2), D-Link AQUILA PRO AI AX6000 Dual-Band Wi-Fi 6 Mesh System 2-Pack (M60/2), D-Link AQUILA PRO AI AX3000 Smart WiFi 6 Mesh Router System 3-Pack - (M30/3), D-Link AQUILA PRO AI AX6000 Dual-Band Wi-Fi 6 Mesh System 3-Pack (M60/3), D-Link WiFi Router AX1800 WiFi 6 - (DIR-X1870), DCS-6500LHV2, Tri Band Whole Home Wi-Fi System (COVR-2202-US), AC1200 Dual Band Whole Home Wi-Fi System- (COVR-C1203-US), Wireless AC1200 Dual Band Router with High-Gain Antennas (DIR-822-US), D-Fend AC2600 Wi-Fi Router (DIR-2680), Wi-Fi AC750 Dual Band Range Extender (DAP-1520), AirPremier® N Dual Band, PoE Access Point powered by CloudCommand™ (DAP- 2555), AirPremier® N Dual Band Exterior PoE Access Point (DAP-3520), Cloud Camera 2200 (DCS-2132L), Full HD Wi-Fi Camera (DCS-2230L), HD Pan, Tilt & Zoom Wi-Fi Camera (DCS-5025L), Pan & Tilt Day/Night Network Camera (DCS-5020L), D-Link Cloud Camera 5000 Pan/Tilt HD Day & Night Network Camera (DCS-5222L), Wi-Fi Baby Monitor (DCS-800L), Wi-Fi Baby Monitor (DCS-820L), Wi-Fi Baby Camera (DCS-825L), Wireless N Day/Night Home Network Camera (DCS-932L), HD WI-FI CAMERA (DCS-936L), HD 180-DEGREE WI-FI CAMERA (DCS-960L), Cloud Router (DIR-605L), Wireless N300 VPN SOHO Router (DIR-640L), AC1750 Wi-Fi Router (DIR-869), AC1900 Wi-Fi Router (DIR-879),

AC3150 Ultra Wi-Fi Router (DIR-885L/R), Wireless AC3200 Ultra Wi-Fi Route (DIR-890L), AC5300 Ultra Wi-Fi Router (DIR-895L), AC2600 WI-FI RANGE EXTENDER (DAP-1860), AirPremier N Dual Band PoE Access Point with Plenum-rated Chassis (DAP-2590), Air Premier® N Dual Band Exterior PoE Access Point powered by CloudCommand™ (DAP-3525), AirPremier® N Dual Band Outdoor PoE Access Point (DAP-3690), Wi-Fi MOTION SENSOR (DCH-S150), mydlink® Wi-Fi Water Sensor (DCH-S160), mydlink® Wi-Fi Siren (DCH-S220), FULL HD 180-DEGREE WI-FI CAMERA (DCS-2530L), FULL HD 180-DEGREE WI-FI CAMERA (DCS-2360L), DCS-2630L, HD 180-DEGREE WI-FI CAMERA (DCS-8200LH), Cloud Camera 1150 (DCS-933L), HD WI-FI CAMERA (DCS-935L), AC1750 WI-FI ROUTER (DIR-859), Wi-Fi SMART PLUG (DSP-W215), Unified Services Routers (DSR-150N, DSR-250N, DSR-500N), AC3900 Whole Home Wi-Fi System (COVR-3902-US), Dual Band Whole Home Wi-Fi System (COVR-C1213), Hybrid Whole Home Powerline Wi-Fi System (COVR-P2502), Tri Band Whole Home Mesh Wi-Fi System (COVR-R2203), AC1200 Wi-Fi Range Extender (DAP-1620), AC1300 Wi-Fi Range Extender (DAP-1620), HD PAN & TILT WI-FI CAMERA (DCS-5030L), Mini HD Wi-Fi Camera (DCS-8000LH/2PK), AC1200 MU-MIMO Wi-Fi Gigabit Router (DIR-842), AC1750 MU-MIMO Wi-Fi Router (DIR-867), AC1900 MU-MIMO Wi-Fi Router (DIR-878),  AC2600 MU-MIMO Wi-Fi Router (DIR-882), OMNA™ 180 CAM HD (DSH-C310), Wi-Fi SMART PLUG (DSP-

W110), Wireless AC1200 Concurrent Dual Band Gigabit PoE Access Point (DAP-2660), AC1200 Wi-Fi Gigabit Route (DIR-1260), AC1300 Smart Mesh Wi-Fi Router (DIR-1360), AC1900 MU-MIMO Wi-Fi Gigabit Router (DIR-1950), AC1900 Smart Mesh Wi-Fi Router (DIR-1960), AC2600 High-Power Wi-Fi Router (DIR-2640), AC2600 Smart Mesh Wi-Fi Router (DIR-2660), AX1500 Mesh Wi-Fi 6 Router (DIR-X1550), Dual-Band 802.11n Unified Wireless Access Point (DWL-6700AP)

- HEVC compatible devices including ("D-Link HEVC Devices"), but not limited to:

  o 2K QHD Indoor Wi-Fi Camera (DCS-8350LH, DCS-8350RE), 8 Megapixel H.265 Outdoor Dome Camera (DCS-4618EK), D-ViewCam Plus (DCS-250), D-ViewCam (DCS-100), H.265 Outdoor Bullet & Dome Cameras Vigilance Series (DCS-4712E, DCS-4714E, DCS-4718E, DCS-4612EK, DCS-4614EK, DCS-4705E, and DCS-4605EV), DCS-8620LH, DCS-8635LH, DCS-6501LH / B1, DCS-8526LH, CP-01M, JustConnect 16-Channel H.265 PoE Network Video Recorder (DNR4020-16P), JustConnect+ App

- Bluetooth compatible devices ("D-Link Bluetooth Devices") including, but not limited to:

  o AX3000 Wi-Fi 6 PCIe Adapter with Bluetooth 5.1 (DWA-X3000), DWA-X582, AX900 Wi-Fi 6 USB Adapter (AX9U), DCH-G601W, DCS-8635LH, DCS-8526LH, Wi-Fi Smart Plug (PM-01M), 2K QHD Outdoor Wi-Fi Camera (DCS-8620LH), M18 AX1800 Wi-Fi 6 AI Router, R32

AX3200 Smart Router, DIR-X6060, DCH-G601W, M18 AX1800 Wi-Fi 6
AI Router

    ○  r

13.    Defendant also instruct their customers, agents, employees, and affiliates regarding how to use the Accused Products for infringing purposes. *See, e.g.*, Quick Installation Guide, D-LINK, available at https://support.dlink.com/resource/PRODUCTS/DCS-8350LH/REVA/DCS-8350LH_A1_QIG_v1.03%28DI%29_90x130.pdf (last visited April 9, 2025) (providing the quick installation guide for installing and using 2K QHD Indoor Wi-Fi Camera DCS-8350LH).

14.    Defendant also import into the United States, distribute, and sell the Accused Products to end-users via the Internet and via distribution partners, retailers, reseller partners, and solution partners. *See, e.g.*, *2K QHD Indoor Wi-Fi Camera DCS-8350LH*, DLINK, available at https://www.dlink.com/us/en/products/dcs-8350lh--2k-qhd-indoor-wi-fi-camera (last visited April 9, 2025); *D-Link mydlink 2K (1440p) Indoor WiFi Camera, 2K Resolution, Night Vision, AI Person Detection, 2-Way Audio, SD/Cloud Recording, Alexa, Google Assistant (DCS-8350LH)*, AMAZON.COM, available at https://www.amazon.com/D-Link-Resolution-Detection-Recording-DCS-8350LH/dp/B00PTQPKCS?th=1 (last visited April 9, 2025); *see also D-Link mydlink 2K (1440p) Indoor WiFi Camera, 2K Resolution, Night Vision, AI Person Detection, 2-Way Audio, SD/Cloud Recording, Alexa, Google Assistant (DCS-8350LH)*, WALMART.COM, available at https://www.walmart.com/ip/D-Link-mydlink-2K-1440p-Indoor-WiFi-Camera-Resolution-Night-Vision-AI-Person-Detection-2-Way-Audio-SD-Cloud-Recording-Alexa-Google-Assistant-DCS-8350/5311559864 (last visited April 9, 2025).  Those sales occur in the United States, and throughout Texas, including in this District.

15.    For these reasons and the additional reasons detailed below, the Accused Products

practice at least one claim of each of the Asserted Patents.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,953,411

16. Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

17. The USPTO duly issued U.S. Patent No. 7,953,411 (hereinafter, the "'411 patent") on May 31, 2011, after full and fair examination of Application No. 11/150,829 which was filed on June 9, 2005. *See* '411 patent at p. 1.

18. Integral Wireless owns all substantial rights, interest, and title in and to the '411 patent, including the sole and exclusive right to prosecute this action and enforce it against infringers and to collect damages for all relevant times.

19. The claims of the '411 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon handover mechanisms for orthogonal frequency division multiplexing (OFDM) and orthogonal frequency division multiple access (OFDMA) wireless communication systems by providing an efficient virtual soft handover (VSHO) mechanism that allows a mobile subscriber station to transmit and receive a frame with only one base station while monitoring communications with adjacent base stations.

20. The written description of the '411 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

21. Defendant has directly infringed and continue to directly infringe one or more claims

of the '411 patent by making, using, selling, offering to sell, importing into the United States, providing, supplying, or distributing the Accused Products.

22.    Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 10 of the '411 patent.

23.    For example, Defendant, through the provision and use of the Accused Products, including, but not limited to, the D-Link 5G Devices perform a  method for implementing a hand over of a mobile subscriber station (MSS) in a wireless communication network, comprising: maintaining an active set comprising a list of transmitting base stations, each transmitting base station capable of communicating with the MSS, the MSS communicating with only one current transmitting base station in a single frame; monitoring all transmitting base stations in the active set while transmitting data to and receiving data from the current transmitting base station in one or more bursts that are allocated for the MSS in the single frame, the data representing communication traffic between the MSS and the current transmitting base station, wherein the current transmitting base station is the only base station of the list of transmitting base stations operated to transmit data to the MSS using the one or more bursts that are allocated for the MSS in the single frame; determining a preferred transmitting base station included in the transmitting base stations based upon the monitoring; informing the preferred transmitting base station to the current transmitting base station by a fast feedback channel; stopping the MSS from transmitting data to and receiving data from the current transmitting base station; and operating the MSS to exchange transmission of data at a subsequent frame with the preferred base station.

24.    Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of Integral Wireless' patent rights.

25.    Defendant willfully blinded itself to the existence of the '411 patent and Defendant's infringement, but Defendant had actual knowledge of said patent since at least the time of receiving the original complaint in this action.

26.    Defendant has also indirectly infringed and continues to indirectly infringe one or more claims of the '411 patent by inducing others to directly infringe said claims.

27.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '411 patent by providing or requiring use of the Accused Products.

28.    Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '411 patent, including, for example, claim 10.

29.    Such steps by Defendant include, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

30.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '411 patent and with the knowledge that the induced acts constitute infringement.

31.    Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '411 patent.

32.    Defendant's inducement is ongoing.

33.    Defendant has also indirectly infringed and continues to indirectly infringe by contributing to the infringement of one or more claims of the '411 patent.

34.    Defendant has contributed to the direct infringement of one or more claims of the '411 patent by their personnel, contractors, and customers.

35.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '411 patent, including, for example, claim 10.

36.    The special features constitute a material part of the invention of one or more of the claims of the '411 patent and are not staple articles of commerce suitable for substantial non-infringing use.

37.    Defendant's contributory infringement is ongoing.

38.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

39.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '411 patent.

40.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

41.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '411 patent.

Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology. The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology. The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

42.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,156,360

43.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

44.    The USPTO duly issued U.S. Patent No. 8,156,360 (hereinafter, the "'360 patent") on April 10, 2012, after full and fair examination of Application No. 12/168,706 which was filed on July 7, 2008. *See* '360 patent at p. 1.

45.    Integral Wireless owns all substantial rights, interest, and title in and to the '360 patent, including the sole and exclusive right to prosecute this action and enforce the '360 patent against infringers and to collect damages for all relevant times.

46.    The claims of the '360 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of computer devices by wirelessly waking computer devices out of reduced power or sleep mode over a wireless local area network and by providing a network card for use with wireless devices that is capable of entering a wireless signal monitoring state and of monitoring received wireless signals while in the state

for a wake up data sequence.

47.    The written description of the '360 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

48.    Defendant has directly infringed one or more claims of the '360 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

49.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 8 of the '360 patent.

50.    As just one example, Defendant, through the use and provision of the Accused Products, including, but not limited to, the D-Link Bluetooth Devices product, provides an apparatus comprising: a controller configured to monitor a plurality of wireless channels for a wake-up packet addressed to a wireless device during a monitor timeframe, wherein the wake-up packet is configured to cause the wireless device to initiate a transition from operating in a first power mode to operating in a second power mode, wherein the controller is configured to initiate the transition from operating the wireless device in the first power mode to operating the wireless device in the second power mode when a wake-up packet addressed to the wireless device has been received before the monitor timeframe has elapsed, and wherein the controller is configured to cease to monitor the plurality of wireless channels when a wake-up packet addressed to the wireless device has not been received after the monitor timeframe has elapsed.

51.    Defendant has a policy or practice of not reviewing the patents of others, including

instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

52. Defendant willfully blinded itself to the existence of the '360 patent and Defendant's infringement, but Defendant had actual knowledge of the '360 patent since at least the time of receiving the original complaint in this action.

53. Defendant has also indirectly infringed the '360 patent by inducing others to directly infringe one or more claims of said patent.

54. Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '360 patent by providing or requiring use of the Accused Products.

55. Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '360 patent, including, for example, claim 8 of the '360 patent.

56. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

57. Defendant is performing these steps, which constitute induced infringement with the knowledge of the '360 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '360 patent.

58.     Defendant's inducement is ongoing.

59.     Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '360 patent.

60.     Defendant has contributed to the direct infringement of one or more claims of the '360 patent by their personnel, contractors, and customers.

61.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '360 patent, including, for example, claim 8.

62.     The special features constitute a material part of the invention of one or more of the claims of the '360 patent and are not staple articles of commerce suitable for substantial non-infringing use.

63.     Defendant's contributory infringement is ongoing.

64.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

65.     Defendant's direct infringement of one or more claims of the '360 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

66.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '360 patent.

67.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest

and costs as fixed by this Court under 35 U.S.C. § 284.

68.     Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '360 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

69.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 10,033,716

70.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

71.     The USPTO duly issued U.S. Patent No. 10,033,716 (hereinafter, the "'716 patent") on July 24, 2018, after full and fair examination of Application No.: 15/278,533 which was filed on September 28, 2016.  *See* '716 patent at p. 1.

72.     Integral Wireless owns all substantial rights, interest, and title in and to the '716 patent, including the sole and exclusive right to prosecute this action and enforce the '716 patent against infringers and to collect damages for all relevant times.

73.     The claims of the '716 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include

inventive components that improve client computing environments by summarizing cross-network user behavioral data and publishing the data to one or more data structures that become accessible to a server hosting an authorized domain when a user accesses the authorized domain.

74.    The written description of the '716 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

75.    Defendant has directly infringed one or more claims of the '716 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

76.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '716 patent.

77.    As just one example, Defendant, through the use and provision of the Accused Products, including, but not limited to, the D-Link System performs computer-implemented method, implemented, at least in part, by a server that includes hardware in combination with software, the method comprising: receiving, by the server, one or more memory structures that include published summarized cross-network user behavior data from a client computer, wherein the published summarized cross-network user behavior data includes: collected cross-network user behavior data related to a user's interactions with a plurality of web sites on the client computer, the collected cross-network user behavior data being summarized on the client computer, and the summarized collected cross-network user behavior data published to the one or more memory structures on the client computer; decoding, by the server, the one or more memory structures;

determining, by the server, at least one of a message or advertisement to send to a browser of the client computer based on the decoded one or more memory structures; customizing, by the server, the at least one of the message or advertisement to be responsive to the summarized cross-network user behavior data; and sending, by the server, the customized at least one of the message or advertisement responsive to the summarized cross-network user behavior data.

78.      Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

79.      Defendant willfully blinded itself to the existence of the '716 patent and Defendant's infringement, but Defendant had actual knowledge of said patent since at least the time of receiving the original complaint in this action.

80.      Defendant has also indirectly infringed one or more claims of the '716 patent by inducing others to directly infringe said claims.

81.      Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '716 patent by providing or requiring use of the Accused Products.

82.      Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '716 patent, including, for example, claim 1.

83.      Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing

instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

84.     Defendant is performing these steps, which constitute induced infringement with the knowledge of the '716 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '716 patent.

85.     Defendant's inducement is ongoing.

86.     Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '716 patent.

87.     Defendant has contributed to the direct infringement of the '716 patent by their personnel, contractors, and customers.

88.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '716 patent, including, for example, claim 1.

89.     The special features constitute a material part of the invention of one or more of the claims of the '716 patent and are not staple articles of commerce suitable for substantial non-infringing use.

90.     Defendant's contributory infringement is ongoing.

91.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

92.     Defendant's direct infringement of one or more claims of the '716 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless'

rights under the patent.

93.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '716 patent.

94.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

95.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '716 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

96.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 8,073,866

97.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

98.    The USPTO duly issued U.S. Patent No. 8,073,866 (hereinafter, the "'866 patent") on

December 6, 2011, after full and fair examination of Application No. 11/377,932 which was filed on March 16, 2006. *See* '866 patent at p. 1.

99.    Integral Wireless owns all substantial rights, interest, and title in and to the '866 patent, including the sole and exclusive right to prosecute this action and enforce the '866 patent against infringers and to collect damages for all relevant times.

100.    The claims of the '866 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed invention includes inventive components that improve the function and operation of internet servers and client computers by providing a method of delivering content from an internet server to a user based on the user's internet navigation history by installing a profile decoder with a profile library on the server, receiving an encrypted summary of the user's navigation history, identifying user content preferences by matching the encrypted summary with available server content, and delivering content based on the identified preferences.

101.    The written description of the '866 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

102.    Defendant has directly infringed one or more claims of the '866 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

103.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '866 patent.

104.    As just one example, Defendant, through the use and provision of the Accused Products, including, but not limited to, the D-Link System performs a method comprising the steps of: (A) storing content on a server system, the content being accessible on said server system according to a first system of organization; (B) obtaining a profile library on the server system, the profile library using a second system of organization of content categories, distinct from said first system of organization of content categories, said profile library providing a mapping from the second system of organization of content categories to the first system of organization of content categories; (C) using the profile library to generate a map between the second system of organization and the first system of organization; (D) receiving, at the server system, a communication from a user computer in communication with the server system, at least a portion of the communication representing a summary of user navigation history on the user computer, the summary having been generated by a behavior tracking module on the user computer, and the summary including information organized according to the second system of organization of content categories; (E) in response to said receiving in (D), the server system: (e1) mapping at least some of the information from the second system of organization of content categories to the first system of organization of content categories, said mapping using the map from said second system of organization of content categories to said first system of organization of content categories, said mapping producing mapped information; (e2) selecting particular available content by the server system based at least in part on the mapped information, said particular content being selected from available content on the server system organized according to the first system of content categories; and (e3) sending the particular available content to the user computer.

105.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind

of Integral Wireless' patent rights.

106.    Defendant willfully blinded itself to the existence of the '866 patent and Defendant's infringement, but Defendant had actual knowledge of the '866 patent since at least the time of receiving the original complaint in this action.

107.    Defendant has also indirectly infringed one or more claims of the '866 patent by inducing others to directly infringe said claims.

108.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '866 patent by providing or requiring use of the Accused Products.

109.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '866 patent, including, for example, claim 1.

110.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

111.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '866 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '866 patent.

112.     Defendant's inducement is ongoing.

113.     Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '866 patent.

114.     Defendant has contributed to the direct infringement of one or more claims of the '866 patent by their personnel, contractors, and customers.

115.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '866 patent, including, for example, claim 1.

116.     The special features constitute a material part of the invention of one or more of the claims of the '866 patent and are not staple articles of commerce suitable for substantial non-infringing use.

117.     Defendant's contributory infringement is ongoing.

118.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

119.     Defendant's direct infringement of one or more claims of the '866 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

120.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '866 patent.

121.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest

and costs as fixed by this Court under 35 U.S.C. § 284.

122.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '866 patent.  Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

123.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,627,805

124.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

125.    The USPTO duly issued U.S. Patent No. 7,627,805 (hereinafter, the "'805 patent") on December 1, 2009, after full and fair examination of Application No. 11/448,603 which was filed on June 6, 2006.  *See* '805 patent at p. 1.

126.    Integral Wireless owns all substantial rights, interest, and title in and to the '805 patent, including the sole and exclusive right to prosecute this action and enforce the '805 patent against infringers and to collect damages for all relevant times.

127.    The claims of the '805 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed invention includes

inventive components that improve data transmission in communication systems by providing a method of coding data using a mother code parity check matrix and a macro matrix.

128.    The written description of the '805 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

129.    Defendant has directly infringed one or more claims of the '805 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

130.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '805 patent.

131.    As just one example, Defendant, through the use and provision of the Accused Products, including but not limited to the D-Link 5G Devices and D-Link 802.11n Devices , performs a method of coding data for transmission in a communication channel comprising: generating a codeword from a mother code parity check matrix and a macro matrix, wherein the mother code parity check matrix comprises a $(j*m)$-by-$(k*m)$ matrix and includes sub-matrices that are $m$-by-$m$ square matrices with cyclic structure, and wherein the macro matrix comprises a $j$-by-$k$ matrix and includes elements that represent nonzero sub-matrices of the mother code parity check matrix.

132.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

133.    Defendant willfully blinded itself to the existence of the '805 patent and Defendant's infringement, but Defendant had actual knowledge of the '805 patent since at least the time of receiving the original complaint in this action.

134.    Defendant has also indirectly infringed one or more claims of the '805 patent by inducing others to directly infringe said claims.

135.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '805 patent by providing or requiring use of the Accused Products.

136.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '805 patent, including, for example, claim 1.

137.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

138.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '805 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '805 patent.

139.    Defendant's inducement is ongoing.

140. Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '805 patent.

141. Defendant has contributed to the direct infringement of one or more claims of the '805 patent by their personnel, contractors, and customers.

142. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '805 patent, including, for example, claim 1.

143. The special features constitute a material part of the invention of one or more of the claims of the '805 patent and are not staple articles of commerce suitable for substantial non-infringing use.

144. Defendant's contributory infringement is ongoing.

145. Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

146. Defendant's direct infringement of one or more claims of the '805 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

147. Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '805 patent.

148. Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

149.     Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '805 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

150.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 8,031,654

151.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

152.     The USPTO duly issued U.S. Patent No. 88,031,654 (hereinafter, the "'654 patent") on October 4, 2011, after full and fair examination of Application No. 11/726,397 which was filed on March 20, 2007.  *See* '654 patent at p. 1.

153.     Integral Wireless owns all substantial rights, interest, and title in and to the '654 patent, including the sole and exclusive right to prosecute this action and enforce the '654 patent against infringers and to collect damages for all relevant times.

154.     The claims of the '654 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed invention includes inventive components that improve the function and operation of wireless communication systems

by enabling more efficient handling of acknowledgment signaling in TCP-based data transfers.

155.    The written description of the '654 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

156.    Defendant has directly infringed one or more claims of the '654 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

157.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 5 of the '654 patent.

158.    As just one example, Defendant, through the use and provision of the Accused Products, including but not limited to the D-Link 5G Devices, provides a wireless subscriber communication unit for use in acknowledging an allocation of resource in a wireless communication system employing transfer communication protocol (TCP) based data transfer between a network and the wireless subscriber communication unit, the wireless subscriber communication unit comprising: a receiver arranged to receive an allocation message and a TCP data segment; processing logic, operably coupled to the receiver and arranged to process the allocation message to identify an allocation of DL resources to receive the TCP data segment plus sufficient uplink (UL) resources to transfer a stand-alone acknowledgement (ACK) data segment, where the allocation of UL resources to support transmission of the stand-alone ACK data segment is based on a count performed in the network of a predetermined number of data segments transmitted to the wireless subscriber communication unit; and a transmitter arranged to transmit

the stand-alone ACK data segment in response to the message.

159.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

160.    Defendant willfully blinded itself to the existence of the '654 patent and Defendant's infringement, but Defendant had actual knowledge of the '654 patent since at least the time of receiving the original complaint in this action.

161.    Defendant has also indirectly infringed one or more claims of the '654 patent by inducing others to directly infringe said claims.

162.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '654 patent by providing or requiring use of the Accused Products.

163.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '654 patent, including, for example, claim 5.

164.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

165.    Defendant is performing these steps, which constitute induced infringement with the

knowledge of the '654 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '654 patent.

166.    Defendant's inducement is ongoing.

167.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '654 patent.

168.    Defendant has contributed to the direct infringement of one or more claims of the '654 patent by their personnel, contractors, and customers.

169.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '654 patent, including, for example, claim 5.

170.    The special features constitute a material part of the invention of one or more of the claims of the '654 patent and are not staple articles of commerce suitable for substantial non-infringing use.

171.    Defendant's contributory infringement is ongoing.

172.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

173.    Defendant's direct infringement of one or more claims of the '654 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

174.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '654 patent.

175.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

176.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '654 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

177.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,707,213

178.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

179.    The USPTO duly issued U.S. Patent No. 7,707,213 (hereinafter, the "'213 patent") on April 27, 2010, after full and fair examination of Application No. 11/677,511 which was filed on February 21, 2007.  *See* '213 patent at p. 1.

180.    Integral Wireless owns all substantial rights, interest, and title in and to the '213 patent, including the sole and exclusive right to prosecute this action and enforce the '213 patent against

infringers and to collect damages for all relevant times.

181.    The claims of the '213 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed invention includes inventive components that improve the function and operation of data processing systems by organizing data into a hierarchical structure of partitions in which each level stores extrema for a group of elements from the level below which enables efficient and scalable data updates without needing to reprocess the entire dataset.

182.    The written description of the '213 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

183.    Defendant has directly infringed one or more claims of the '213 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

184.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 16 of the '213 patent.

185.    As just one example, Defendant, through the use and provision of the Accused Products, including but not limited to the D-Link HEVC Devices, performs a method for generating data, comprising: partitioning, by a computing device, a base level data set into one or more partitions in memory; generating, by the computing device, a coarse representation of extrema of each of the one or more partitions of the base level data by finding and storing the extrema of the partitions in memory; and updating, by the computing device, the coarse

representation if one or more data values of the base level data are altered, wherein the updating the coarse representation comprises finding and storing new extrema in memory from one of the one or more partitions of the base level data that includes altered data values.

186.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

187.    Defendant willfully blinded itself to the existence of the '213 patent and Defendant's infringement, but Defendant had actual knowledge of the '213 patent since at least the time of receiving the original complaint in this action.

188.    Defendant has also indirectly infringed one or more claims of the '213 patent by inducing others to directly infringe said claims.

189.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '213 patent by providing or requiring use of the Accused Products.

190.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '213 patent, including, for example, claim 16.

191.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused

Products in an infringing manner.

192.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '213 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '213 patent.

193.    Defendant's inducement is ongoing.

194.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '213 patent.

195.    Defendant has contributed to the direct infringement of one or more claims of the '213 patent by their personnel, contractors, and customers.

196.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '213 patent, including, for example, claim 16.

197.    The special features constitute a material part of the invention of one or more of the claims of the '213 patent and are not staple articles of commerce suitable for substantial non-infringing use.

198.    Defendant's contributory infringement is ongoing.

199.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

200.    Defendant's direct infringement of one or more claims of the '213 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

201.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '213 patent.

202.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

203.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '213 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

204.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VIII: INFRINGEMENT OF U.S. PATENT NO. 7,707,214

205.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

206.    The USPTO duly issued U.S. Patent No. 7,707,214 (hereinafter, the "'214 patent") on April 27, 2010, after full and fair examination of Application No. 11/677,515 which was filed on February 21, 2007.  *See* '214 patent at p. 1.

207.    Integral Wireless owns all substantial rights, interest, and title in and to the '214 patent, including the sole and exclusive right to prosecute this action and enforce the '214 patent against infringers and to collect damages for all relevant times.

208.    The claims of the '214 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed invention includes inventive components that improve the function and operation of data processing systems by using a hierarchical data structure that enables efficient identification and updating of extrema based on indirect addressing of data values.

209.    The written description of the '214 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

210.    Defendant has directly infringed one or more claims of the '214 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

211.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 15 of the '214 patent.

212.    As just one example, Defendant, through the use and provision of the Accused Products, including but not limited to the D-Link HEVC Devices, performs a method, comprising: partitioning, by a computing device, a set of data values into one or more partitions in memory; generating, by the computing device, a coarse representation of extrema of each of the one or more partitions of the set of data values and storing indices indicative of locations of extrema in the

partitions in memory; and updating, by the computing device, the coarse representation in response to altering one or more data values of the set of data values, wherein the updating comprises storing in memory indices indicative of locations of any new extrema in partitions from the one or more partitions of the set of data values that include altered data values.

213.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

214.    Defendant willfully blinded itself to the existence of the '214 patent and Defendant's infringement, but Defendant had actual knowledge of the '214 patent since at least the time of receiving the original complaint in this action.

215.    Defendant has also indirectly infringed one or more claims of the '214 patent by inducing others to directly infringe said claims.

216.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '214 patent by providing or requiring use of the Accused Products.

217.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '214 patent, including, for example, claim 15.

218.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing

ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

219.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '214 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '214 patent.

220.    Defendant's inducement is ongoing.

221.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '214 patent.

222.    Defendant has contributed to the direct infringement of one or more claims of the '214 patent by their personnel, contractors, and customers.

223.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '214 patent, including, for example, claim 15.

224.    The special features constitute a material part of the invention of one or more of the claims of the '214 patent and are not staple articles of commerce suitable for substantial non-infringing use.

225.    Defendant's contributory infringement is ongoing.

226.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

227.    Defendant's direct infringement of one or more claims of the '214 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

228.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '214 patent.

229.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

230.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '214 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology.  The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology.  The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

231.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

232.    Integral Wireless hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

233.    Integral Wireless requests that the Court find in its favor and against Defendant, and that the Court grant Integral Wireless the following relief:

a.  Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.  A permanent injunction enjoining Defendant and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '411 patent, the '360 patent, the '716 patent, the '866 patent, the '805 patent, the '654 patent, the '213 patent, and the '214 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c.  Judgment that Defendant account for and pay to Integral Wireless all damages to and costs incurred by Integral Wireless because of Defendant's infringing activities and other conduct complained of herein;

d.  Judgment that Defendant's infringements be found willful as to the '411 patent, the '360 patent, the '716 patent, the '866 patent, the '805 patent, the '654 patent, the '213 patent, and the '214 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award Integral Wireless its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>April 11, 2025</u>                     Respectfully submitted,

                                        By: */s/ James F. McDonough, III*

                                        James F. McDonough, III (GA 117088) *
                                        **ROZIER HARDT MCDONOUGH, PLLC**
                                        659 Auburn Avenue NE, Unit 254
                                        Atlanta, Georgia 30312
                                        Telephone: (404) 564-1866
                                        Email: jim@rhmtrial.com


                                        C. Matthew Rozier (CO 46854) *
                                        **ROZIER HARDT MCDONOUGH, PLLC**
                                        1500 K Street, 2nd Floor
                                        Washington, District of Columbia 20005
                                        Telephone: (404) 779-5305; (202) 316-1591
                                        Email: matt@rhmtrial.com


                                        Jonathan L. Hardt (TX 24039906) *
                                        **ROZIER HARDT MCDONOUGH, PLLC**
                                        712 W. 14th Street, Suite A
                                        Austin, Texas 78701
                                        Telephone: (210) 289-7541
                                        Email: hardt@rhmtrial.com

***Attorneys for Plaintiff INTEGRAL WIRELESS TECHNOLOGIES LLC***

                                              * Admitted to the Eastern District of Texas

**List of Attachments**

- Civil Cover Sheet
- Proposed Summons

**List of Supporting Links**

1. U.S. Patent No. 7,953,411, USPTO, https://patentcenter.uspto.gov/applications/7953411.

2. U.S. Patent No. 8,156,360, USPTO, https://patentcenter.uspto.gov/applications/8156360.

3. U.S. Patent No. 10,033,716, USPTO, https://patentcenter.uspto.gov/applications/10033716.

4. U.S. Patent No. 8,073,866, USPTO, https://patentcenter.uspto.gov/applications/8073866.

5. U.S. Patent No. 7,627,805, USPTO, https://patentcenter.uspto.gov/applications/7627805.

6. U.S. Patent No. 8,031,654, USPTO, https://patentcenter.uspto.gov/applications/8031654.

7. U.S. Patent No. 7,707,213, USPTO, https://patentcenter.uspto.gov/applications/7707213.

8. U.S. Patent No. 7,707,214, USPTO, https://patentcenter.uspto.gov/applications/7707214.